## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| v. | : | DATE FILED: _____ |
| TANNER ROUGHTON | : | VIOLATIONS: |
| | | 18 U.S.C. § 1349 (conspiracy to commit |
| | : | wire fraud – 1 count) |
| | | 18 U.S.C. § 1343 (wire fraud – 1 count) |
| | : | 26 U.S.C. § 7201 (tax evasion – 1 count) |
| | | Notice of forfeiture |

# I N F O R M A T I O N

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this Information:

### Relevant Individuals and Entities

1.      Defendant TANNER ROUGHTON was a resident of the Commonwealth of Virginia.  Defendant ROUGHTON was the Chief Operating Officer of Belacam, Inc. ("Belacam"), a company that purported to offer a social media site, in which users could post visual content and receive Belacoin cryptocurrency when other users responded favorably to the posts.  According to a Belacam-issued "white paper," "Belacam, originally intended to be the 'Instagram of Cryptocurrency,' has become an earning platform for impoverished communities, cryptocurrency enthusiasts, and everyday smartphone users."

2.      Co-Conspirator 1 was a resident of the Commonwealth of Virginia and the Chief Executive Officer of Belacam.

3.     The term "cryptocurrency" referred to a class of financial instruments that allowed the transfer of value between individuals without any third-party mediation or government regulation.  Cryptocurrencies existed entirely on the Internet and not in any physical form.  Such cryptocurrency was not issued by any government, bank, or company, but rather was generated and controlled automatically through computer software operated on a decentralized, "peer-to-peer" network using the "Blockchain" concept.  The Blockchain for cryptocurrencies was the record of every transaction that had ever occurred.  It was often referred to as a "ledger" of all transactions.  This transfer of cryptocurrency was accomplished with a set of cryptographic protocols executed entirely over the Internet.  These protocols required that each transaction's sender and receiver held an appropriate cryptographic key.  Cryptocurrency was invented in approximately 2009, and examples of cryptocurrencies in widespread use included Bitcoin, Ethereum, and Litecoin.

4.     1CRedit (or "1CR") was a cryptocurrency.  1Credit used a Blockchain and could be bought, sold, and traded on a crypto-to-crypto digital asset trading service (together with its predecessors, successors, parents, subsidiaries, and affiliates, "Cryptocurrency Exchange A").  Cryptocurrency Exchange A allowed users to electronically buy, sell, and trade cryptocurrency in exchange for another cryptocurrency.

5.     Belacoin (or "Bela") was a cryptocurrency.  Belacoin used a Blockchain and could be bought, sold, and traded on Cryptocurrency Exchange A.

6.     A "pump and dump" was a form of fraud in which the perpetrators purchase a security, commodity, or cryptocurrency at a low price, artificially inflate the price by engaging in market manipulation, sell their interests at the artificially inflated price, after which

the investors who purchased at the artificially inflated prices suffer losses when the price plummets.

## The Conspiracy

7.      From at least in or about March 2016, through at least in or about June 2020, in the Eastern District of Pennsylvania and elsewhere, defendant

## TANNER ROUGHTON

together with Co-Conspirator 1 and others known and unknown to the United States Attorney, conspired to commit an offense against the United States, namely, wire fraud, that is, knowingly and with the intent to defraud, to devise, and to intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted certain wire communications in interstate and foreign commerce, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Manner and Means

It was part of the conspiracy that:

8.      The conspirators manipulated the price of and trading in 1CRedit and Belacoin cryptocurrencies in order to defraud investors in 1CRedit and Belacoin and obtain illicit proceeds.

9.      The conspirators acquired large positions in 1CRedit and Belacoin cryptocurrencies, which were thinly traded and low priced.

3

10.     The conspirators engaged in matched and manipulated trading of 1CRedit and Belacoin that had no business purpose, but which had the effect of artificially increasing the trading volume and price of 1CRedit and Belacoin.

11.     The conspirators engaged in promotional activity about 1Credit and Belacoin directed to the public and potential purchasers, by making false and misleading statements about 1CRedit and Belacoin and misrepresenting that 1CRedit and Belacoin were not being manipulated nor being operated as a "pump and dump." These statements were for the purpose of increasing public interest in 1CRedit and Belacoin as a legitimate investment and to make them seem more valuable than they were, when, in reality, the conspirators were fraudulently manipulating trading in 1CRedit and Belacoin.

12.     Once the prices of 1CRedit and Belacoin were artificially increased—as a result of the conspirators' false and fraudulent statements and manipulative trading—the conspirators sold 1CRedit and Belacoin at inflated prices and reaped illicit trading profits to the detriment of the investing public.

13.     Because public purchasers had first lost money due to the conspirators' 1CRedit manipulation, the conspirators, when thereafter conducting their fraudulent manipulation of Belacoin, made false and fraudulent statements about their lack of involvement with 1CRedit, including denying that they had worked on, and controlled, 1CRedit. At the time they made these statements, 1CRedit's price had already quickly risen and fallen. In attempting to market Belacoin, the conspirators assured the public and potential purchasers that Belacoin was being operated to avoid a pump and dump, when, in fact, the conspirators were fraudulently manipulating Belacoin, similar to their manipulation of 1CRedit.

4

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

At all times material to this Information:

1.      Paragraphs 1–6 of Count One of this Information are re-alleged and incorporated by reference as though fully set forth herein.

### The Scheme

2.      From at least in or about March 2016, through at least in or about June 2020, defendant

### TANNER ROUGHTON

devised and intended to devise a scheme to defraud buyers, sellers, and traders of 1CRedit and Belacoin and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

### Manner and Means

3.      The United States re-alleges and incorporates by reference Paragraphs 8 through 13 of Count One of this Information as a description of the manner and means of the scheme.

### The Wire

4.      On or about January 30, 2017, in the Eastern District of Pennsylvania and elsewhere, defendant

### TANNER ROUGHTON

for the purpose of executing the scheme described above caused to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signal, pictures,

6

and sounds, to wit, an electronic transaction through the systems of Cryptocurrency Exchange A by which T.C. purchased approximately 341,509.7285 units of Belacoin, at a price of 0.00001464 Bitcoin per unit of Belacoin, for a total of 4.99970242 Bitcoin.

All in violation of Title 18, United States Code, Section 1343.

## COUNT THREE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.     Paragraph 1 of Count One of this Information is re-alleged and incorporated by reference as though fully set forth herein.

2.     In calendar years 2016, 2017, and 2018, defendant TANNER ROUGHTON received approximately $103,526 in gross income from cryptocurrency trading activities.

3.     From on or about January 1, 2016, through on or about January 24, 2020, in the Eastern District of Virginia and elsewhere, defendant

**TANNER ROUGHTON,**

a resident of Virginia Beach, Virginia, willfully attempted to evade and defeat an income tax due and owing by him to the United States of America for the calendar years 2016, 2017, and 2018, and, for calendar years 2017 and 2018, failed to make an income tax return on or about April 17, 2018, and April 15, 2019, respectively, as required by law, to any proper officer of the Internal Revenue Service, and, for calendar years 2016, 2017, and 2018, failed to pay to the Internal Revenue Service the income tax due and owing and concealed and attempted to conceal from all proper officers of the United States of America his true and correct income through various means, including, among other things:

(a)     by failing to disclose, on Fannie Mae Forms 1003, Uniform Residential Loan Applications, dated December 6, 2019, and January 24, 2020, respectively, his income from cryptocurrency activities or his employment with Belacam;

(b)     by dealing in cryptocurrency for the purchase of goods and

services.

        All in violation of Title 26, United States Code, Section 7201.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     As a result of the violations of Title 18, United States Code, Sections 1343 and 1349, defendant

### TANNER ROUGHTON

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offenses, including, but not limited to, the sum of at least $92,636.34.

2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

10

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).


**JENNIFER ARBITTIER WILLIAMS**
**ACTING UNITED STATES ATTORNEY**

*No.*_ _ _ _ _ _ _ _ _ _

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

## THE UNITED STATES OF AMERICA

vs.

TANNER ROUGHTON

## INFORMATION

Counts

18 U.S.C. § 1349 (conspiracy to commit wire fraud – 1 count);18 U.S.C. § 1343 (wire fraud – 1 count); 26 U.S.C. § 7201 (tax evasion – 1 count); Notice of forfeiture

A true bill.

_____
Foreman

Filed in open court this _____day,
Of _____A.D. 20_____
_____
Clerk

Bail, $_____